UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAPORIA LATRICE COOPER,<br><br>                 Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security[1],<br><br>                 Defendant. | CASE NO. C16-5896-MAT<br><br>ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Laporia Cooper proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1987.[2] She completed the eleventh grade and obtained a certified nursing assistant (CNA) license. (AR 41-42.) Plaintiff previously worked as a home

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

[2] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

ORDER
PAGE - 1

attendant, child monitor, and waitress. (AR 42, 51.)

Plaintiff protectively filed an SSI application in April 2013, alleging disability beginning December 28, 2012. (AR 142.) Her application was denied initially and on reconsideration.

On April 1, 2015, ALJ Gary Elliott held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 37-54.) On April 8, 2015, the ALJ issued a decision finding plaintiff not disabled since her application date. (AR 19-32.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on April 8, 2015 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's posttraumatic stress disorder (PTSD) and major depressive disorder severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform

ORDER
PAGE - 2

a full range of work at all exertional levels, and able to perform simple, routine, repetitive tasks and occasionally have superficial contact with the public and coworkers. With that assessment, the ALJ found plaintiff unable to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a janitor, cleaner II, and sorter, agricultural produce.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff avers error at steps two, three, and four. She requests remand for an award of benefits or, in the alternative, for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Step Two

At step two, a claimant must make a threshold showing that her medically determinable

impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987), and 20 C.F.R. § 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id*.

Plaintiff argues the ALJ erred in failing to find her psoriasis a severe impairment and, consequently, in failing to account for any associated limitations in her RFC. Plaintiff does not, however, demonstrate any error in relation to psoriasis.

An impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques, and established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a statement of symptoms. 20 C.F.R. § 416.921. *See also* SSR 96-4p ("under no circumstances may the existence of an impairment be established on the basis of symptoms alone."); *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (same). Nor is a diagnosis alone sufficient to establish a severe impairment. Instead, a claimant must show her medically determinable impairments are severe. *See generally* § 416.921.

The ALJ did not err at step two. There are no medical signs or laboratory findings establishing psoriasis as a medically determinable impairment. The two records cited by plaintiff as containing a psoriasis diagnosis reflect only plaintiff's report, during psychological assessments,

of a prior psoriasis diagnosis (AR 242) and of "[s]tress related lesions on her head" (AR 360). Plaintiff's symptom reporting, standing alone, does not suffice to establish severity, and the record contains some reporting detracting from such a finding. For example, in April 2014, plaintiff reported in relation to her "stress [lesions]": "They're still there. They're not really as bad as they were before. I'm still bald, sometimes it is in one area but it's not like really bad." (AR 295.)

The ALJ did, moreover, consider plaintiff's skin condition at step four. He noted plaintiff's testimony that "high stress" caused her skin problems, hair loss, and acne on her head, as well as her testimony regarding sleep-related difficulties. (AR 23-24.) The ALJ found that, while plaintiff "has a skin condition related to her anxiety, . . . it does not prevent her from working in the above [RFC]." (AR 25.) He described plaintiff's reporting that the condition became more pronounced when she was under stress, and three instances in which she reported stress break-outs, including when she had been kicked out of her home, was doing homework, going to school, and helping watch children, and another time when CPS had taken her niece away. He noted her April 2014 report it was "'not like really bad'", as well as multiple treatment observations reflecting that, despite her skin condition, plaintiff was appropriately dressed and groomed. (*Id*.) The ALJ reasoned that plaintiff "had some significant life events which appear to have been the primary aggravating factor" and "with counseling and treatment her skin condition tended to improve and even the claimant admitted it was getting better." (*Id*.)

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). The ALJ's resolution must be upheld where the evidence provides reasonable support and is rationally interpreted, *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999), and *Morgan v. Comm'r of SSA*,

169 F.3d 595, 599 (9th Cir. 1999). The ALJ's consideration of plaintiff's skin condition is reasonably supported and a rational interpretation of the evidence.

Finally, even if it could be said the ALJ erred in failing to find a skin condition severe at step two, any error would be harmless given the limitations adopted at step four. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to list impairment as severe at step two harmless where limitations considered at step four). The ALJ here limited plaintiff to simple, routine, repetitive tasks and only occasional, superficial contact with the public and coworkers. These limitations account for plaintiff's testimony regarding stress, difficulty sleeping, and a resulting impact on her ability to concentrate. (*See* Dkt. 10 at 7.) While plaintiff argues the condition also puts her at risk for infection, she points to no medical evidence of record supporting such a claim. Because the ALJ accounted for the existing medical evidence and plaintiff's testimony as to her skin condition, there is no basis for a step four error.

## Step Three

At step three, the ALJ considers whether one or more of a claimant's impairments meet or medically equal an impairment listed in Appendix 1 to Subpart P of the regulations. "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original; citations omitted).

Plaintiff bears the burden of proof at step three. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A mere diagnosis does not suffice to establish disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). An impairment "'must also have the *findings* shown in the Listing of that impairment[,]'" *id*. (quoting § 404.1525(d); emphasis added in *Key*), and "must meet *all* of the specified medical criteria." *Sullivan*, 493 U.S. at 530 (emphasis in original). "To equal a listed

impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment[.]" *Tackett,* 180 F.3d at 1099; § 416.926 (a). The equivalence finding must be based on medical evidence, *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001), and will not be satisfied with a showing the "overall functional impact" of an impairment is as severe as a listed impairment, *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). "The reason for this is clear. Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Id.* (quoting *Sullivan*, 493 U.S. at 532).

Plaintiff contends the ALJ erred at step three because her depressive disorder and PTSD satisfy the "B criteria" for listings 12.04 and 12.06. In order to satisfy the B criteria for these listings, a claimant must demonstrate at least two of the following: (1) marked restriction in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06.[3]

The ALJ found only mild difficulty with activities of daily living, no more than moderate limitations in social functioning and concentration, persistence, and pace, and no episodes of decompensation. (AR 21-22.) With activities of daily living, the ALJ noted plaintiff's friend/ roommate did not report any difficulties plaintiff had with getting dressed, bathing, or feeding herself, and stated she could prepare small meals daily and perform household chores such as vacuuming and laundry. (AR 21.) Plaintiff also helped watch two children. With social functioning, plaintiff could use public transportation, and have some contact with others, although

---

[3] The listings also contain paragraph A and C criteria, neither of which are in dispute in this case. Also, while the criteria for these listings have been revised, the changes are not effective until January 17, 2017, after the ALJ's 2015 decision.

ORDER
PAGE - 7

she preferred to shop at night when she would have fewer interactions. (AR 22.) Plaintiff has friends, socialized with a cousin, and socialized with others by texting, but did not get along with and was angry with her brother. She goes to the library and went to a casino to play slots. Finally, with respect to concentration, persistence, or pace, plaintiff was able to attend five hours of classes at a technical college in 2013 while studying for a GED. She had difficulty concentrating in class and became frustrated and angry in math class, and eventually reported she was going to take a semester off. During a mental status examination, she had adequate concentration, but was distracted by external sources and had difficulty solving math problems. The ALJ observed that his conclusion in each domain matched the opinions of State agency psychological consultants Drs. James Baily and Edward Beaty. (AR 21-22, 60, 71-72.)

Plaintiff avers the ALJ's findings in relation to her daily activities are incomplete, inaccurate, and not supported by substantial evidence, and that the specific, limited activities pointed to in relation to her social functioning and concentration, persistence, and pace do not demonstrate her limitations or account for the majority of the evidence. She points to evidence as supporting her contrary interpretation of the record. (*See* Dkt. 10 at 8-12.) However, the ALJ's alternative interpretation of the evidence is also rational. That is, the ALJ reasonably interpreted the evidence to show that, while plaintiff was limited in different respects, her limitations did not rise to the level of marked impairment or support a step three finding of disability.

### RFC

Plaintiff avers the RFC also failed to take into account the full range of her symptoms from her other severe impairments. She contends, for example, that the limitation to simple tasks does not adequately account for the assessed moderate limitations in concentration, persistence, and pace. However, as with the alleged failure to consider her skin condition at step four, plaintiff

does not demonstrate error in the RFC assessment as relating to her other impairments.

RFC is the most a claimant can still do despite her limitations. 20 C.F.R. § 416.945(a)(1). An RFC must include all of the claimant's functional limitations supported by the record. *Valentine v. Comm'r SSA*, 574 F.3d 685, 690 (9th Cir. 2009). The "final responsibility" for decision issues such as an individual's RFC "is reserved to the Commissioner." SSR 96-5P. *Accord* §§ 416.927(d)(2), 416.946(c). That responsibility includes "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r, SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)).

The ALJ reasonably construed the medical record, including medical opinions from examining psychological consultant Dr. Jonathan Allison and from Drs. Bailey and Beaty, to support the RFC assessed. (*See* AR 22-29.) Plaintiff's assertion of error on this point is conclusory, and largely dependent on her other assignments of error. *See Stubbs-Danielson*, 539 F.3d at 1175-76 (mere restating of argument does not support error at step four). The ALJ's RFC assessment has the support of substantial evidence and will not be disturbed.

Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[4] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's

---

[4] In SSR 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p. However, this change is effective March 28, 2016 and not applicable to the April 2015 ALJ decision in this case. The Court, moreover, continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 9

complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Contrary to plaintiff's contention, and as described below, the ALJ in this case provided a number of specific, clear, and convincing reasons for not fully accepting plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms.

An ALJ may discount a claimant's testimony where it is inconsistent with and/or contradicted by medical evidence of record. *See Carmickle*, 533 F.3d at 1161, and *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). *See also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). The ALJ in this case outlined inconsistent and contradictory medical evidence, and reasonably concluded that, while plaintiff had some functional limitations as accounted for in the RFC, she was not as limited as she claimed. (AR 24-25.)

The ALJ also found plaintiff not as limited as alleged, "as evidenced by her disinterest in fully addressing all of her issues with medical personnel." (AR 26.) He noted, as an example, evidence of plaintiff's failure to fully disclose or accurately report her substance use, and evidence she did not want to address in counseling her use of cannabis or alcohol. (*Id.*) The ALJ, in so doing, reasonably drew "inferences logically flowing from the evidence[,]" *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), and properly accounted for evidence of inconsistent statements

and a lack of candor regarding drug and alcohol use, *see Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999), and *Thomas*, 278 F.3d at 959.

An ALJ properly considers evidence associated with a claimant's treatment, 20 C.F.R. § 416.929(c)(3), SSR 96-7p and SSR 16-3p, including unexplained or inadequately explained failure to seek or follow through with treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ noted evidence plaintiff reduced her treatment as time went by, including, but not limited to, her March 2014 report she only wanted to see her case manager once a month, her failure to continue attending anger management group sessions begun in May 2014, a July 2014 report she was no longer interested in medication or group services, and her September 2014 discharge due to her failure to return to treatment. (AR 26.) The ALJ reasonably construed the evidence to indicate plaintiff did not feel as limited by her impairments as she alleged.

An ALJ may discount testimony where inconsistent with a claimant's activities. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills[.]") The ALJ here cited to the same evidence of plaintiff's daily and social activities discussed at step two, as well as the evidence of her ability to attend five hours of classes at a technical college while studying for her GED. (AR 27.) The ALJ noted that, while plaintiff was unable to pass her math class, she did not report being unable to pass other subjects, and that, while math may be an area of concern, plaintiff would not be expected to deal with complex math formulas if limited to simple, routine, repetitive tasks.

The ALJ further contrasted plaintiff's testimony that she cannot keep a job, with her report to Dr. Allison that she had never been fired, and other evidence showing her jobs ended for reasons unrelated to plaintiff. (AR 27 (plaintiff told Dr. Allison her employer lost contract hours to run a

nursing home and, at hearing, testified her child care employer had gone to jail).) The ALJ reasonably considered the fact plaintiff had been able to perform these jobs and that the jobs were not lost despite plaintiff's mental impairments. *See Smolen*, 80 F.3d at 1284 (ALJ may consider a claimant's work history), and *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) (previous ability to work with alleged symptom is a relevant consideration).

The record also contains the opinions of examining psychological consultant Dr. Allison that plaintiff was responding well to treatment and was capable of following simple instructions and returning to employment in the future. (AR 244-45; *see also* AR 28-29 (affording significant weight to the opinions of Dr. Allison and some weight to the opinions of Drs. Bailey and Beaty).) The ALJ's consideration of plaintiff's symptom testimony therefore finds additional support in the medical opinion evidence. *See Thomas*, 278 F.3d at 958-59 (ALJ may consider testimony of physicians as to nature, severity, and effect of symptoms alleged).

Plaintiff disagrees with the ALJ's interpretation of evidence associated with her drug use reporting and her lack of compliance with treatment. She asserts her use of substances to self-medicate her symptoms and her avoidance of group therapy is understandable given her PTSD, anxiety, and history of trauma, and that her missed appointments are explained by her frequently demonstrated self-isolation. However, while this posits a rational alternative interpretation of the evidence, it does not undercut the ALJ's different, but also rational interpretation. Also, while plaintiff notes her reports of problems with her math class and a discussion of placing her on a 504 plan to assist her with schooling (AR 315-16), the ALJ took those difficulties into consideration and found no conflict with the assessed RFC.

The Court does, however, agree as to one error identified by plaintiff. Specifically, the ALJ erred in his depiction of a treatment record as reflecting plaintiff's report "that she prefers to

relax at home." (AR 26 (citing AR 307-08).) As plaintiff avers, this report is taken out of context and does not detract from her testimony as to the degree of her impairment. (*See* AR 307-08 (in discussing incident involving the father of her sister's baby, plaintiff stated: "'I'm going to find him and then I don't know. Things might get physical.'"; after discussing situation, making a safety plan, and employing deep breathing and distraction techniques, plaintiff reported "she will not seek out her sister's baby daddy and would prefer to just relax at home.")) In any event, because the ALJ provided a number of other specific, clear, and convincing reasons for not fully accepting plaintiff's symptom testimony, this single error in the assessment is properly deemed harmless. *Carmickle*, 533 F.3d at 1162-63 (the relevant inquiry "is not whether the ALJ would have made a different decision absent any error, . . . [but] whether the ALJ's decision remains legally valid, despite such error.")

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 11th day of May, 2017.

Mary Alice Theiler
United States Magistrate Judge